IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHELLE L.,[1] | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 20-cv-400-SMY |
| | ) |
| ANDREW SAUL, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|        **Defendant.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Michelle L. seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB in January 2017, alleging a disability onset date of November 2016. An Administrative Law Judge ("ALJ") denied the application on May 15, 2019 following an evidentiary hearing (Tr. 12-31). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1-6). Plaintiff exhausted administrative remedies and filed a timely Complaint with this Court.

## Issues Raised by Plaintiff

Through counsel, Plaintiff raises the following points:

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P. 5.2(c) and the Advisory Committee Notes.

1. Whether the ALJ erred by failing to account for moderate deficits of concentration, persistence, or pace within the residual functional capacity ("RFC") finding;
2. Whether the ALJ erred in failing to build a logical bridge between the mental impairment evidence and the RFC finding; and
3. Whether the ALJ erred by relying on Vocational Expert (VE) testimony based on job incidence methodology that was unreliable.

## Legal Standard

To qualify for DIB, a claimant must be "disabled" within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520. An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g).  Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Judicial review is not abject, meaning the Court does not act as a rubber stamp for the Commissioner.  *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### Decision of the ALJ

Plaintiff was insured for DIB through December 31, 2021.  The ALJ followed the five-step analytical framework with respect to Plaintiff's application. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date and that she suffered from the following severe impairments since the alleged onset date of disability: fibromyalgia, degenerative disc disease, obesity, and major depression and generalized anxiety disorder. However, he found that Plaintiff's alleged hearing loss did not cause more than minimal vocationally relevant limitations and was, therefore, not severe.

The ALJ further found the following with respect to Plaintiff's RFC:

> She cannot climb ladders, ropes, or scaffolds.  She can occasionally climb ramps and stairs, balance, stoop kneel, crouch, and crawl.  She must avoid all hazards. She can perform frequent handling, fingering, and feeling with her non-dominant left upper extremity.  She can understand and remember simple instructions.  She

> can attend to and carry out routine and repetitive tasks, but not at a production rate pace (e.g. assembly line work).  She can occasionally interact with the public and coworkers.

The ALJ concluded that Plaintiff had the RFC to perform work at the light exertional level with several limitations.

Based on the testimony of a Vocational Expert (VE), the ALJ concluded that Plaintiff was unable to engage in past relevant work but was not disabled because she was able to do other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order.  The following summary of the record is directed to the points raised by Plaintiff.

### Agency Forms

Plaintiff was born in 1971 and was 44 years old on the alleged onset date of November 1, 2016 (Tr. 75).  She listed the following conditions as limiting her ability to work in her application for disability benefits: cirrhosis of liver stage 2-3 (NASH), type 2 diabetes, IBS, psoriasis, psoriatic arthritis, DDD, duodenal ulcers, fibromyalgia, costochondritis, and hypothyroidism (Tr. 79).

### Evidentiary Hearing

Plaintiff was represented by counsel at her hearing on March 7, 2019 (Tr. 37) and testified to the following: In 2018, She worked in a sales position at a multilevel marketing company for approximately five months, but never made more than $1,000.  She was last employed as a dispensing optician at Clarkson Eyecare from 2014 to April 2016 and was fired from her job due to poor job performance (Tr. 51-52).  She alleges that her manager knew about her health conditions and instructed her not to go into work some days or to take the morning off, but

unbeknownst to the Plaintiff, these were being counted as absences against her. *Id*. She has a driver's license and was able to drive to the hearing (Tr. 45). She cares for several pets and animals, including 12 chickens and 2 donkeys (Tr. 46). She can perform some household chores, such as sweeping, grocery shopping, and preparing meals (Tr. 60, 63-64). She attends multiple doctors' appointments every week (Tr. 54). She is only able to sit for fifteen to twenty minutes and can only stand for five to ten minutes. She is able to go on walks (Tr. 58, 62-63).

A Vocational Expert ("VE") testified during the hearing (Tr. 68). The ALJ posed hypothetical questions to the expert that corresponded to the ultimate RFC findings. (Tr. 69-71). The VE testified that there is work in the national economy for an individual with Plaintiff's conditions (Tr. 71). This work was categorized as light occupation. *Id*.

## Relevant Medical Records

Plaintiff's history includes self-reporting depression. She was diagnosed with adjustment disorder with mixed anxiety and depressed mood in January 2017 (Tr. 497). Following hospitalization for an adverse reaction to opiates and benzodiazepines, her memory was reportedly quite poor, and she could not maintain focus for extended periods due to pain.[2] *Id*.

A psychiatric exam conducted during an April 6, 2018 doctor's appointment noted that Plaintiff had good judgement; an active, alert and depressed mental status; normal orientation; and that her recent memory was normal (Tr. 637).

On May 21, 2018, Plaintiff reported suffering from depression and anxiety and was referred to her counselor from the previous year (Tr. 632). She was diagnosed with recurrent and moderate major depressive disorder. *Id*.

---

[2] Plaintiff testified that she went to a few counseling sessions but stopped going because her health insurance limited the number of free sessions (Tr. 67).

In January 2019, Plaintiff was diagnosed by Southern Illinois Associates, LLC with moderate recurrent major depression disorder and generalized anxiety (Tr. 942). Counseling was recommended and she was given a prescription. *Id*. Plaintiff told the attending physician that "prior to 2 years ago I really never had depression or anxiety. Just situational things" (Tr. 941). She noted improvement the following month after taking her prescription (Tr. 934).

Medical history from doctor's visits noted that neurological and psychiatric exams were normal, with memory and orientation levels normal (Tr. 348, 363, 366, 392, 386, 398).

### State Agency Consultants' Opinions

The record does not include an opinion from a treating physician but does include two state agency consultant opinions. On April 28, 2017, James Madison, M.D., reviewed the evidence and opined that Plaintiff could perform medium work, including standing with breaks for 6 hours per day and sitting for 6 hours per day (Tr. 82, 84). Lenore Gonzalez, M.D., also reviewed Plaintiff's file and concluded that Plaintiff was not disabled (Tr. 102).

### Discussion

Plaintiff asserts that the ALJ erred in assessing her RFC and in relying on the vocational expert opinion. The Court discusses each argument in turn.

### The ALJ's RFC Determination

At step four, the ALJ determined that despite her limitations, Plaintiff had the following RFC:

> She cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop kneel, crouch, and crawl. She must avoid all hazards. She can perform frequent handling, fingering, and feeling with her non-dominant left upper extremity. She can understand and remember simple instructions. She can attend to and carry out routine and repetitive tasks, but not at a production rate pace (e.g. assembly line work). She can occasionally interact with the public and coworkers.

Plaintiff argues that the ALJ improperly evaluated her RFC because these restrictions were not described in the medical evidence, and fail to reflect a deficit in concentration, persistence, or pace, and that the ALJ failed to explain the basis of the moderate work finding or cite to supportive or descriptive evidence. The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. 20 C.F.R. § 404.1545(a). It is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," *Id.*, and must be supported by substantial evidence. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000). "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). An "ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). However, "an ALJ need not mention every piece of evidence, so long as [she] builds a logical bridge from the evidence to [her] conclusion." *Id.* (citing *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)).

In this case, the ALJ accurately characterized the medical evidence and supported his RFC determination with substantial evidence. He noted that Plaintiff received limited mental health treatment for her depression and generalized anxiety disorder. While he noted that following liver biopsy in January 2017, Plaintiff suffered an adverse reaction to opiates and benzodiazepines that resulted in poor memory and concentration, he reasonably concluded that with the exception of this isolated incident, the medical evidence did not indicate that her concentration, orientation, or general thought processes were abnormal. Any irregular mental status findings during that time were short-term.

Plaintiff's diagnosis with mental health conditions does not alone establish disability functional limitations. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("The issue in the case is not the existence of these various conditions of [the claimant's] but their severity."). While Plaintiff testified to memory issues and social anxiety, her mental status findings were largely normal, including normal concentration, sustained attention, and intact memory, and she also reported improvement following some counseling and taking a prescription for her symptoms. And the medical providers performing physical examinations noted normal mental status findings. Subjective complaints that conflict with objective evidence, do not necessarily establish functional limitations. *Manley v. Barnhart*, 154 F. App'x 532, 536 (7th Cir. 2005); *Moothart v. Bowen*, 934 F.2d 114, 117 (7th Cir. 1991). The objective medical evidence did not compel a finding of disabling mental limitations.

The ALJ found that due to Plaintiff's impaired but "fair" functioning in concentration, persistence, and pace, she could (1) "attend to and carry out routine and repetitive tasks, but not at a production rate pace (e.g. assembly line work)"; and (2) occasionally interact with the public and coworkers (Tr. 20). Ultimately, the ALJ was required to explain his subjective symptom evaluation "in such a way that allows [the Court] to determine whether []he reached [his] decision in a rational manner, logically based on [his] specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (internal quotations omitted). This Court does not find that the ALJ was patently wrong in his assessment in this case.

### *Vocational Expert Opinion*

The ALJ must assess the claimant's RFC at the fourth and fifth steps of the applicable analysis, including determining what work-related activities the claimant can perform despite her limitations. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); 20 C.F.R. § 404.1545(a)(1). The RFC must be assessed based on all the relevant evidence in the record. 20 C.F.R. §

404.1545(a)(1); *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). A vocational expert's ("VE") testimony can satisfy the assessment requirements only if that testimony is reliable. *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008).

Plaintiff contends the ALJ erred in relying on the VE's job incidence data opinion. Specifically, she argues that the information was false and his methodology for arriving at job incidence data was unreliable. The VE testified that an individual with Plaintiff's age education, experience, and RFC could work as an office helper (DOT 239.567-014), housekeeping cleaner (323.687-014), or courier (DOT 230.663-010) (Tr. 60). He further stated that there were approximately 74,000 office helper jobs; 900,000 housekeeping cleaner jobs; and 74,000 courier jobs (Tr. 66). Plaintiff's counsel asked the VE to "tell us where you obtained the job numbers," and the VE responded that they were "[f]rom the Bureau of Labor Statistics" (Tr. 67). "If the basis of a VE's testimony about job numbers is questioned at the hearing, the ALJ must make an inquiry to find out whether the testimony is reliable." *Kohlhaas v. Berryhill*, No. 17-CV-413-JPG-CJP, 2018 WL 1090311, at *4 (S.D. Ill. Feb. 28, 2018) (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)). But Counsel neglected to inquire further into the VE's sources or methodology and made no objection to his testimony (Tr. 67-68). A failure to object at the ALJ hearing to a VE's testimony about the number of positions for identified jobs forfeits the issue for judicial review. *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016); *see also Ronnie L. v. Comm'r of Soc. Sec.*, No. 18-cv-1109, 2019 WL 652309, at *5 (S.D. Ill. Feb. 15, 2019). Because "the VE's testimony was both unobjected to and uncontradicted . . . the ALJ was entitled to credit this testimony." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009). As such, the ALJ properly relied on the VE's testimony.

**Conclusion**

After careful review of the record, the Court finds that ALJ's findings are supported by substantial evidence and that he committed no errors of law. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED.** The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED:  July 28, 2022**

**STACI M. YANDLE**
**United States District Judge**